IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OMAR PAYNE,                         :        CIVIL ACTION
                                    :        No. 14-2198
        Petitioner,                 :
                                    :
        v.                          :
                                    :
TABB BICKELL, et al.,               :
                                    :
        Respondents.                :
                                    :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                            April 25, 2016

        Petitioner Omar Payne ("Petitioner"), a prisoner at
State Correctional Institute Huntingdon ("SCI-Huntingdon"), in
Huntingdon, Pennsylvania, filed a pro se application seeking
relief through a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254. Magistrate Judge Faith Angell recommended denial of the
Habeas Petition without an evidentiary hearing and with no
certificate of appealability. Petitioner now objects. For the
reasons that follow, the Court will adopt Judge Angell's Report
and Recommendation.

## I.   FACTUAL BACKGROUND

        The Pennsylvania Superior Court, quoting the trial
court, offered the following summary of the facts:

        On December 26, 2006, at approximately 1:00 PM,
        Tyree Humphrey (Humphrey), Tyrone Kegler (Kegler),

1

Norman Lott White (White), and a male identified only as Paris, were standing together talking in front of German Groceries (the store), a grocery store located on the corner of 53rd and Delancey Streets in the City and County of Philadelphia. The four had just exited the store. While still inside the store, Humphrey noticed a white Saturn pull over and stop in the middle of 53rd Street as if someone was just going to run into the store and come right back out. There were two people in the car, a female, later identified as Robin Payne, in the driver's seat and a male, later identified as [Appellant], in the passenger seat. Appellant was wearing dark jeans and a light colored hoodie. Appellant exited the vehicle, walked past Kegler and the others, and walked into the store, then exited again. When [Appellant] exited the store, he had a gun in his hand. Appellant stood in front of White, pointed the gun at him and mumbled something that sounded like "Nigger, remember me?" Kegler turned and ran down 53rd Street toward Pine Street and Humphrey ran back inside the store. As they ran, they heard three to six gunshots. When Humphrey came back out of the store, he found White lying on the ground, gasping for air and observed the white car pull off of Delancey Street and make a right turn.

Nasir Baynes, a resident of the neighborhood, was inside a cell phone store located at 53rd and Spruce Street, about one hundred yards away, when he heard gunshots. He looked in the direction of the gunfire and observed the white Saturn in the middle of 53rd Street and a male, wearing a gray hoodie, come from Delancey Street and enter the car on the passenger side. The male was looking toward the corner of Delancey Street, holding his arm up at a ninety[-]degree angle to his body, pointing in the direction of Delancey Street at the same time Baynes heard the gunfire. After the male entered the white vehicle, the car accelerated away, down 53rd Street making a left onto Spruce Street toward 54th Street. Baynes flagged down SEPTA Transit Police Officer, Edward Brinkman[,] who was travelling westbound on 53rd Street in his marked patrol car, and told Officer Brinkman that a male had been shot. Officer Brinkman proceeded to 53rd and Delancey Street where he was directed to the location of the body by several members of the crowd that had gathered. Officer Brinkman observed White on the ground, unresponsive but

breathing, and called for rescue on his SEPTA police radio. He also observed two fired cartridge casings in a puddle near White's body. Rescue arrived and transported White to the Hospital of the University of Pennsylvania where he was pronounced dead at 1:34 PM. An autopsy determined the cause of death to be multiple gunshot wounds, one of which caused damage to White's heart, lungs and spinal cord. A bullet was recovered from White's chest and submitted to the police for analysis.

Philadelphia Police Officer Mario Ransome and his partner[,] Officer Newsome[,] were stopped at a red light at 53rd and Pine Streets when they heard gunshots coming from the 53rd and Delancey Street area. Officer Ransome observed a white Saturn fleeing and several people pointing at the vehicle. The officers pursued the Saturn in their police vehicle, giving flash information over police radio indicating the color of the Saturn and the direction the Saturn was travelling. Officer Ransome and Officer Newsome pursued the Saturn, staying within several feet of the vehicle, until it lost control and crashed into a tree in the front yard of 245 Melville Street. Officers Ransome and Newsome, accompanied by two other Philadelphia Police Officers who had responded to the flash, Officer Billy Golphin and Officer Davila, approached the crashed Saturn with their weapons drawn. Officer Ransome forced the driver's door and removed Robin Payne. He then noticed a black handgun wedged between the console and the passenger's side seat. The handgun was made safe and returned to its original location to be collected by the Crime Scene Unit. Officer Golphin removed [Appellant] through the passenger's side window as the passenger door was wedged shut due to the collision. Both [Appellant] and Robin Payne were transported to the Homicide Unit for questioning.

Commonwealth v. Payne, No. 1837 EDA 2012, 2013 WL 11253751, at *1-2 (Pa. Super. Ct. Sept. 20, 2013) (alterations in original).

## II.   PROCEDURAL BACKGROUND

On April 25, 2008, a jury sitting in the Court of Common Pleas of Philadelphia County convicted Petitioner of first-degree murder, carrying a firearm without a license, and possession of an instrument of crime. Report & Recommendation 3, ECF No. 15 ("R&R"). The trial court sentenced Petitioner on April 29, 2008, to life imprisonment and a consecutive term of three and one-half to seven years' incarceration. Id. Petitioner's post-sentence motions were denied. Id. at 4.

Petitioner then filed a timely notice of appeal, arguing that (1) the guilty verdicts were against the sufficiency and weight of the evidence; (2) the trial court erroneously denied his motion to suppress; (3) the trial court erroneously permitted the testimony of Commonwealth witness Tyree Humphrey; and (4) the trial court erroneously denied Petitioner's motion for a mistrial after a spectator's outburst in the courtroom. Id. The Court of Common Pleas determined that Petitioner was due no relief on appeal. Commonwealth v. Payne, No. 51-0006394-2007, slip op. at 17 (Pa. Ct. Common Pleas Mar. 30, 2009), ECF No. 14-1.

On appeal to the Superior Court of Pennsylvania, Petitioner pursued only the sufficiency and weight of the evidence issue. R&R 4. The Superior Court affirmed the judgment of sentence. Commonwealth v. Payne, 2739 EDA 2008, slip op. at 3

4

(Pa. Super. Ct. Feb. 25, 2010), ECF No. 14-2. Petitioner sought allocatur, and the Pennsylvania Supreme Court denied his petition for discretionary review. R&R 4.

On June 16, 2011, with appointed counsel, Petitioner timely filed his petition for post-conviction collateral review pursuant to Pennsylvania's Post-Conviction Relief Act, 42 Pa. Cons. Stat. § 9541, et seq. ("PCRA"). Id. Petitioner later retained new counsel and filed an amended PCRA petition. Id. Petitioner's amended petition claimed that his trial counsel was ineffective for (1) failing to renew a request for a mistrial and/or request a contemporaneous curative instruction regarding inflammatory statements offered by Tyree Humphey; (2) failing to raise a claim at trial that the court violated Petitioner's constitutional rights by accepting the prosecutor's unsworn attestation that she did not fail to disclose the inflammatory statements by Tyree Humphrey to the defense, pursuant to Brady v. Maryland, 373 U.S. 83 (1963); (3) failing to raise at trial and/or request a contemporaneous curative instruction stating that the court violated Petitioner's constitutional rights by failing to grant a mistrial when a spectator shouted a comment related to Petitioner's credibility in front of the jury; (4) improperly advising Petitioner not to testify at trial; (5) failing to object to the admission of knowingly false and inconsistent testimony from Tyrone Kegler; and (6) failing to

request a specific charge on mistaken belief as to the voluntary manslaughter charge. Id. at 5.

After reviewing all filings and conducting an independent review of the record, the PCRA court dismissed the petition on June 1, 2012. Id. at 6. Petitioner filed a timely notice of appeal, and thereafter decided to proceed with his appeal pro se. Id.

In his pro se PCRA appeal, Petitioner asserted the same six claims that he had raised below. Id. The Superior Court determined that "Appellant's boilerplate allegations of prejudice are insufficient to satisfy his burden of proving ineffectiveness." Payne, 2013 WL 11253751, at *5. The court concluded that "[b]ecause the absence of any of the ineffectiveness prongs precludes relief, each of Appellant's claims fail."[1] Id.

---

[1]      Judge Angell rejected the Commonwealth's position that the Superior Court found Petitioner's claims "waived due to lack of development." R&R 22 n.19 (citing Resp. 14, ECF No. 14). Judge Angell "read the Superior Court's analysis on the PCRA appeal as a merits determination, not a procedural waiver." Id. She further explained: "In this case, I see nothing in the Superior Court opinion to suggest that it declined to consider Mr. Payne's ineffective assistance of counsel claims on the merits because of a procedural bar." Id.

        The Court agrees with Judge Angell's assessment, because "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011).

On April 4, 2014, Petitioner signed his federal habeas petition, which was filed on April 14, 2014. R&R 6. Judge Angell properly accepted the earlier date of April 4, 2014, as the date of filing, pursuant to the prison mailbox rule. Id. at 6 n.8 (citing Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998)).

Petitioner alleges one ground for relief: that his "[c]onviction was obtained and sentence imposed in violation of right to effective assistance of counsel." Pet. 5, ECF No. 1. He sets forth the following allegations in support of this claim:

> The verdict was against the weight of the evidence, and did not prove the defendant was the perpetrator of the crime, based on speculation and conjecture, failure to demand a suppression hearing, allowing of incriminating testimony over the objection and demand for a Mistrial that influenced the minds of the jury[,] failure to preserve or argue on appeal, Defense failure to disclose pursuant to "Brady" violation, failure to demand curative instructions and/or preserve for appeal a claim that trial court violated the defendant[']s rights by failing to grant a "Mistrial" when audience member prejudicially shouted a comment[] in front of jury. For failing to properly advise defendant not to testify. For failing to object to the admission of knowingly false testimony[] and for counsel's failure to request the court to specifically charge the jury on "Mistaken Belief" voluntary manslaughter. Trial counsel who was also appeal counsel, post conviction counsel's actions[] and omissions viewed collectively along with the due process and equal protection of the law violations established not only ineffective assistance but due process violations to the constitution of the united states [sic].

Id. at 5-6.[2]

---

[2]      Petitioner's memorandum of law in support of his petition is 91 pages long, consisting of repetitive, sometimes

On August 16, 2014, the Commonwealth responded, arguing that some of Petitioner's allegations are unexhausted and thus procedurally defaulted. ECF No. 14. The remaining allegations, the Commonwealth argues, are "patently without merit." Id. at 2.

Judge Angell entered his R&R on January 12, 2015. ECF No. 15. Receiving no objection, the Court approved and adopted the R&R. ECF No. 17. Petitioner then moved to "withdraw" the R&R, arguing that he never received a copy of it. ECF No. 21. Construing Petitioner's motion as one for reconsideration, the Court denied it, because Petitioner failed to allege any facts to support his claim; however, the Court granted Petitioner leave to file a statement of facts to explain why relief should be granted. ECF No. 23.

On February 26, 2016, Petitioner filed a notice of appeal. ECF No. 24. Then, on March 16, 2016, he filed a statement of facts supporting his claim that he did not receive the R&R. ECF No. 27. Upon consideration of Petitioner's statement and for good cause shown, the Court vacated its order adopting the R&R and allowed Petitioner to file objections thereto. ECF No. 28. Petitioner filed his objections on June 9, 2015, ECF No. 29, and the Third Circuit dismissed Petitioner's

---

non-cognizable statements and block quotes from cases. See ECF Nos. 1-1 to 1-4.

earlier-filed appeal for lack of appellate jurisdiction. ECF No. 30.

With his objections pending, Petitioner filed a motion for stay in abeyance of entry of judgment, ECF No. 31, which the Court denied as moot, ECF No. 32. The habeas petition is now ripe for review.

## III. LEGAL STANDARD

A district court may refer an application for a writ of habeas corpus to a U.S. Magistrate Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). A prisoner may object to the magistrate judge's report and recommendations within fourteen days after being served with a copy thereof. See 28 U.S.C. § 636(b)(1); E.D. Pa. R. 72.1(IV)(b). The court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court does not review general objections. See Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) ("We have provided that § 636(b)(1) requires district courts to review such objections de novo unless the objection is not timely or not specific." (internal quotation marks omitted)). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Therefore, the court

will conduct a de novo review of those portions of the R&R to which Petitioner objects.

On habeas review, a court must determine whether the state court's adjudication of the claims raised was (1) contrary to, or an unreasonable application of, clearly established federal law, or (2) based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), on habeas review, a federal court must presume that factual findings of state trial and appellate courts are correct. Stevens v. Del. Corr. Ctr., 295 F.3d 361, 368 (3d Cir. 2002). This presumption can be overcome only on the basis of clear and convincing evidence to the contrary. See Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("AEDPA requires a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement. If this standard is difficult to meet--and it is--that is because it was meant to be." (internal citations omitted)); Stevens, 295 F.3d at 368.

A habeas petitioner must "exhaust[ ] the remedies available in the courts of the State" before obtaining habeas relief. 28 U.S.C. § 2254(b)(1)(A). If the state courts have

declined to review the merits of a petitioner's claim based on his failure to comply with a state rule of procedure, the claim is procedurally defaulted. See Harris v. Reed, 489 U.S. 255, 262-63 (1989). Although "[a] habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion[, as] there are no state remedies any longer 'available' to him," Coleman v. Thompson, 501 U.S. 722, 732 (1991), procedurally defaulted claims cannot be reviewed unless "the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 750.

## IV. DISCUSSION

Judge Angell recommends that Petitioner's habeas petition be denied, because Petitioner did not present his challenge to the weight and sufficiency of the evidence to the state courts, and the Superior Court properly applied the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), to Petitioner's ineffective assistance claim. R&R 17-18, 20-22. Petitioner raises two objections: (1) Judge Angell's analysis "was contrary to Strickland v. Washington, 466 U.S.

688[] (1984)," and (2) an evidentiary hearing should be afforded. Objs. 2, 4. Each objection is considered in turn.[3]

A.   Ineffective Assistance of Counsel

The "clearly established Federal law" governing Petitioner's ineffectiveness claim is set out in Strickland v. Washington, 466 U.S. 668 (1984). On habeas review, the question is whether the state court's application of Strickland was "objectively unreasonable." Bell v. Cone, 535 U.S. 685, 699 (2002). To obtain reversal of a conviction on ineffective assistance grounds, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. See Strickland, 466 U.S. at 687; Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008).

First, to prove deficient performance, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. The court will consider whether counsel's performance was reasonable under all of the circumstances. Id. Furthermore, the court's "scrutiny of counsel's performance must be highly

---

[3]     Petitioner did not object to Judge Angell's recommendation that the weight and sufficiency of the evidence claim should be dismissed. See R&R 17-18. The Court addresses only those arguments to which a petitioner objects. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Therefore, the Court will approve and adopt Judge Angell's recommendation as to that claim.

deferential"--that is, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In raising an ineffective assistance claim, the petitioner must first identify the acts or omissions that allegedly deviated from "reasonable professional judgment." Id. at 690. Next, the court must determine whether those identified acts or omissions fall outside of the "wide range of professionally competent assistance." Id.

Second, to prove prejudice, a petitioner must affirmatively prove that counsel's alleged errors "actually had an adverse effect on the defense." Id. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If a petitioner fails to satisfy either prong of the Strickland standard, his claim will fail. Id. at 697.

When reviewing a state court's application of Strickland, a "doubly" deferential standard of review applies. Harrington v. Richter, 562 U.S. 86, 105 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. As such, "[a] state court's determination that a

13

claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). To succeed, a petitioner must show "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

Here, Petitioner raised six bases for his ineffective assistance claim before the Superior Court on PCRA appeal, and he maintains those six claims in his federal habeas petition. R&R 19-20.

In the R&R, Judge Angell concluded that the Superior Court properly applied Pennsylvania's ineffective assistance standard, which is based on the federal Strickland standard, to assess Petitioner's ineffective assistance claim. Id. at 20. The Superior Court had explained that

> Appellant offers no meaningful discussion of prejudice as it relates to his individual claims. By way of example, Appellant does not discuss how a curative instruction, which he alleges trial counsel was ineffective for failing to request regarding the inflammatory statements offered by Tyree Humphrey, would have affected the jury's consideration of the substantial evidence of Appellant's guilt. Similarly, Appellant never discusses how his self-defense testimony, had his counsel not advised him against testifying, would have balanced or overcome the

14

> testimony offered by the Commonwealth, creating any
> likelihood of a different verdict. Appellant makes the
> same or similar omissions in his argument for each of
> his six claims.

Id. at 21 (quoting Payne, 2013 WL 11253751, at *5). According to

Judge Angell, the Superior Court reasonably determined that

Petitioner offered "nothing more than a boilerplate allegation

of prejudice" in his petition. Id. (quoting Payne, 2013 WL

11253751, at *5). And, as Judge Angell stated, "[t]he failure to

establish prejudice defeats a Strickland ineffective assistance

of counsel claim." Id. at 22.

Petitioner now objects to Judge Angell's conclusion.

He restates the alleged bases for his ineffective assistance

claim and argues that the state court, as well as Judge Angell,

improperly applied the Strickland standard in four ways. Objs.

2-7.

First, Petitioner argues that the state court and

Judge Angell improperly applied the Strickland standard by

failing to consider the totality of the evidence. Id. at 5-6. He

alleges that "[i]nstead[,] the [s]tate [c]ourt [s]ystem began

[its] analysis by using the facts in the light most favorable to

the state as if a post conviction motion were a second appeal."

Id. at 6. But an independent review of the habeas petition and

Petitioner's 91-page supporting memorandum shows that the state

court reasonably applied the Strickland standard to the totality of evidence available.

Under the prejudice prong, "Strickland asks whether it is 'reasonably likely' the result would have been different"; "[t]he likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Here, Petitioner alleged that "the deficiently prepared witness had a relevant out come [sic] on the trial" because "the evidence the witnesses would have given may have had [sic] a positive contribution on the trial." Pl.'s Mem. 13, ECF No. 1-1. He stated that he "did in fact establish prejudice when he demonstrated that there was a reasonable probability that but for the counsel's unprofessional conduct/error[s] that were so numerous[,] the results of the proceeding would have been different." Id. at 15. He also argued that he meets the "reasonable probability" standard "by demonstrating that the missing evidence would have altered the out come [sic] of the trial." Id. at 17. He makes repetitive and similarly conclusive allegations of prejudice throughout the memorandum. Id. 15-17. These conclusory statements, without more, do not show a reasonable probability of a different result that rises above the level of mere conceivability. See Richter, 562 U.S. at 111. Petitioner has not met his burden of demonstrating that but for

his counsel's alleged errors, the result of his case would have been different. See Strickland, 466 U.S. at 694.

Moreover, contrary to Petitioner's assertion, the state court did not purport to view the facts in the light most favorable to the state when analyzing Petitioner's ineffective assistance claim. The Superior Court applied Pennsylvania's ineffectiveness standard, which is a three-prong[4] iteration of the Strickland standard. Compare Payne, 2013 WL 11253751, at *5 (outlining Pennsylvania's ineffectiveness standard) (citing Commonwealth v. Bomar, 826 A.2d 831, 855 (Pa. 2003)), with Outten v. Kearney, 464 F.3d 401, 414 (3d Cir. 2006) (stating federal Strickland standard). The court viewed the facts in the light most favorable to the state only when assessing Petitioner's challenge to the weight and sufficiency of the evidence on direct appeal, which was proper. See Payne, slip op. 1-2 (citing Commonwealth v. Wallace, 817 A.2d 485, 490 (Pa. Super. Ct. 2002)).

As such, it cannot be said that "the state court's ruling . . . was so lacking in justification that there was an

---

[4]     The Pennsylvania courts "have rearticulated the Strickland Court's performance and prejudice inquiry as a three-prong test. Specifically, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error." Commonwealth v. Dennis, 17 A.3d 297, 301 (Pa. 2011).

error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. And because the Court "only look[s] far enough to determine if the state court reasonably applied federal law," <u>Collins v. Sec'y of Pa. Dep't of Corr.</u>, 742 F.3d 528, 550 (3d Cir. 2014), the Court agrees with Judge Angell that the Superior Court reasonably concluded that Petitioner's boilerplate allegations of prejudice fall short of <u>Strickland</u>'s required showing of prejudice. <u>See</u> R&R 22.

In his second objection to the R&R, Petitioner argues that the state court and Judge Angell did not consider the cumulative negative effect of counsel's deficient performance. Objs. 6. Petitioner contends that "the [s]tate [c]ourt [s]ystem adopted the item-by-item approach which is [i]nconsistent with <u>Strickland</u>." <u>Id.</u>

But Petitioner did not make a cumulative error claim during the state post-conviction proceedings; he raises it for the first time in his objections to the R&R. <u>Compare</u> <u>Payne</u>, 2013 WL 11253751, at *3-4, <u>with</u> Objs. 6. A claim of cumulative error must be presented to the state courts before it may provide a basis for habeas relief. <u>Collins</u>, 742 F.3d at 541. And under Local Rule 72.1.IV(c), "[a]ll issues and evidence shall be presented to the magistrate judges, and unless the interest of justice requires it, new issues and evidence shall not be raised

18

after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge." E.D. Pa. Civ. R. 72.1.IV(c). Accordingly, this claim is procedurally defaulted[5] and not properly before the Court.

Third, Petitioner contends that the state court and Judge Angell "engaged in prohibited post hoc rationalization for trial counsel's acts and omissions in violation of Strickland." Objs. 6. "[C]ourts may not indulge 'post hoc rationalization' for counsel's decisionmaking that contradicts the available evidence of counsel's actions." Richter, 562 U.S. at 109 (quoting Wiggins v. Smith, 539 U.S. 510, 526-27 (2003)) (internal citation omitted).

But here, there was no post hoc rationalization of counsel's acts, because counsel's acts were not analyzed at all. Petitioner's ineffective assistance claim was dismissed for failure to establish prejudice. See Payne, 2013 WL 11253751, at *5; R&R 22. Where Plaintiff failed to meet his burden of showing prejudice, there was no need to analyze counsel's decisionmaking. See Grant v. Lockett, 709 F.3d 224, 234 (3d Cir. 2013) (explaining that a "court need not determine whether

---

[5]       Petitioner has not "demonstrate[d] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[d] that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" (quoting Strickland, 466 U.S. at 697)). Therefore, this objection provides no basis for post-conviction relief.

Fourth, Petitioner contends that the state court and Judge Angell failed to "conduct the probing analysis for prejudice . . . as required by Sears v. Upton, [561 U.S. 945 (2010)]." Objs. 6. In Sears, the Supreme Court held that a Georgia post-conviction court failed to conduct the proper prejudice inquiry when determining that counsel's facially inadequate mitigation investigation did not prejudice the defendant. 561 U.S. at 954. The Court stated that it has "never held that counsel's effort to present some mitigation evidence should foreclose an inquiry into whether a facially deficient mitigation investigation might have prejudiced the defendant." Id. at 955. Instead, the Court explained "that the Strickland inquiry requires precisely the type of probing and fact-specific analysis that the state trial court failed to undertake below." Id.

"However, Sears does not stand for the broad proposition that a court must conduct a probing inquiry for prejudice in every claim for ineffective assistance of counsel." Ford v. Superintendent, SCI-Frackville, No. 12-01278, 2013 WL 5457801, at *4 (E.D. Pa. Sept. 19, 2013). Unlike the defendant

in Sears, Petitioner does not bring a claim for ineffective assistance based on counsel's failure to investigate mitigation evidence. Moreover, the prejudice analysis in Sears "was not governed by the deferential review that applies under AEDPA." Williams v. Roper, 695 F.3d 825, 838 n.4 (8th Cir. 2012); see also Ponticelli v. Sec'y Fla. Dep't Corr., 690 F.3d 1271, 1299 (11th Cir. 2012) (same). As such, Sears does not render the state court decision in this case contrary to or an unreasonable application of clearly established federal law.

In sum, Petitioner has not shown "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner's objections to the R&R are overruled.

B.   Evidentiary Hearing

Petitioner also requests an evidentiary hearing "since he was denied his rights under the Six[th] Amendment." Objs. 4, 5. A federal court may hold an evidentiary hearing if the claim relies on a new rule of constitutional law or a new fact that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2). Here, Petitioner has not shown that his claims fall within either of these two narrow

21

exceptions. He states that an evidentiary hearing should be
granted "so the facts can be fully represented," Objs. 7, but
the statute specifically prohibits an evidentiary hearing to
"develop the factual basis of a claim in State Court
proceedings." 28 U.S.C. § 2254(e)(2). Therefore, Petitioner's
request for an evidentiary hearing will be denied.

## V.   CERTIFICATE OF APPEALABILITY

A petitioner seeking a Certificate of Appealability
must demonstrate "a substantial showing of the denial of a
constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner
satisfies this standard by demonstrating that jurists of reason
could disagree with the district court's resolution of his
constitutional claims or that jurists could conclude the issues
presented are adequate to deserve encouragement to proceed
further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Here,
the Court will decline to issue a Certificate of Appealability,
because Petitioner has not made a substantial showing of the
denial of his constitutional rights. See Slack v. McDaniel, 529
U.S. 473, 484 (2000).

## VI.  CONCLUSION

For these reasons, the Court will approve and adopt
Judge Angell's R&R, overrule Petitioner's objections thereto,
and deny the Petition for a Writ of Habeas Corpus without an

evidentiary hearing. The Court will not issue a Certificate of Appealability. An appropriate order follows.